# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA TILLMAN,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH M. ALONSO,** | : | |
| **STEVEN SAN GIORGIO,** | : | |
| **LEON HUNTER,** | : | |
| **ANTHONY COLGAN,** | : | |
| **NEWTOWN TOWNSHIP,** | : | |
| **MARPLE TOWNSHIP,** | : | |
| **UPPER PROVIDENCE TOWNSHIP,** | : | |
| **AND JOHN DOE 1-10,** | : | |
| **Defendants** | : | **No. 04-4391** |

Gene E.K. Pratter, J.          Memorandum and Order          December 16, 2005

Defendants Newtown and Marple Township, Joseph Alonso, Steven San Giorgio, Leon Hunter, and Anthony Colgan (collectively, the "Defendants") all move for summary judgment in this civil rights and personal injury case.[1]

**FACTS AND PROCEDURAL BACKGROUND**

The plaintiff in this case is Barbara Tillman, a 71 year-old retired nurse's assistant who, at the time of the incident in question, lived alone at 32 Pine Street, Newtown Square, Pennsylvania. The defendants are Joseph M. Alonso and Steven San Giorgio, officers for the Newtown Township Police Department, Leon Hunter, the Chief of the Newtown Police

---

[1] Two summary judgment motions were filed. The first motion was filed by Joseph Alonso, Steven San Giorgio, Leon Hunter and Newtown Township. These defendants will be referred to as the "Newtown Defendants". The second motion was filed by Anthony Colgan and Marple Township. These defendants will referred to as the "Marple Defendants". Upper Providence Township, which was once a defendant in the case and is still listed in the caption, was dismissed case by stipulation dated July 25, 2005.

Department, Anthony Colgan, a police officer for the Marple Township Police Department, and Marple and Newtown Townships.

The incident from which this case arises occurred on September 28, 2002. On that date, Officer Alonso was dispatched by a 911-operator to No. 18 Hickory, the home of David Haske, Sr. and Linda Haske to respond to a domestic dispute. The genesis of the dispute was an altercation between David Haske, Jr. and his parents and sibling, Kelly Haske. Although Ms. Tillman disagrees with the characterization of the reason the officers were dispatched to the Haske home,[2] she does not dispute that a call asking for police assistance to the Haske household was made.

The seriousness of the situation that police discovered upon arriving at the Haske home is a matter of some dispute between the parties. While the Defendants assert that David Haske, Sr. and Kelly Haske appeared to have serious injuries that were inflicted by David Haske, Jr., Ms. Tillman contends that the officers could not have concluded that David was extremely dangerous. For example, while Ms. Tillman asserts that at the initial visit, the police never saw Kelly Haske, the Defendants assert that Kelly Haske approached the officer with arms outreached that were spattered with blood. There is further disagreement as to whether Officer Alonso was told about the condition of the interior of the Haske home after the incident that had occurred between David Haske, Jr. and the other members of his family. While certain of the Defendants assert that, although they did not enter the home, the condition of the home was described to them by the Haskes, Ms. Tillman asserts that the record is not clear as to whether details of

---

[2] Ms. Tillman asserts that the officers were dispatched for a domestic "call" and not a domestic "dispute."

2

interior damage were shared with Officer Alonso at that time.

In any event, the parties appear to agree that someone from the Haske household told Officer Alonso that an altercation had occurred between David Haske, Jr. and the other Haske family members and that David Haske, Jr. was probably going to his grandmother's (Ms. Tillman's) home, which was located a few blocks away.  After tending to the incident at the Haske residence, Officer Alonso  radioed Newtown police officer Steven San Giorgio and Marple Township police officer Anthony Colgan to alert them as to what had happened at the Haske home.

Next, either Officer San Giorgio or Officer Alonso[3] went to Ms. Tillman's home looking for David Haske, Jr., and found that he was not there.  Again, there is some dispute as to exactly what Ms. Tillman was told at this initial visit.  While Officer Alonso alleges that he asked Ms. Tillman if David was there and told her that David had just "beat the hell out of everyone at his house" and that she should not allow David to enter her home, Ms. Tillman asserts that Officer San Giorgio simply told her there had been an altercation at the Haske home and asked if David Haske, Jr. was there. Alonso Dep. at 9:7-10; B. Tillman Dep. at 26:4-7.

A few minutes after the officer left Ms. Tillman's home, David Haske, Jr. entered the back door into the kitchen, shut and locked the front and back doors, advised Ms. Tillman that the police were chasing him and hid under a bed in the back bedroom.  Once David was locked in the Tillman home, police officers from Newtown, Upper Providence and Marple Townships

---

[3]  It is not clear which of these officers initially went to the Tillman home.  The Newtown Fact Recitation states that "a Newtown Township Police Officer" went to the home, and the Marple Fact Recitation states that Officer Alonso went there.  Newtown Fact Recitation at ¶ 16; Marple Defendants' Ex. C, J. Alonso Dep. at 9:1-4.  Ms. Tillman asserts that it was Officer San Giorgio, and not Officer Alonso, who came to her home the first time.  Tillman Dep. at 24:8-10.

surrounded the home.  According to the Defendants, the officers observed and heard David

Haske, Jr. trying to exit the home through a back window.  When this attempt was apparently

unsuccessful, Officers Alonso and San Giorgio decided that they needed to enter the home.  J.

Alonso Dep. at 11:20-24; S. San Giorgio Dep. at 14:19-22.  Officer San Giorgio, assisted by

Officer Colgan of Marple Township, then obtained entry by force through the front door of the

home.  The officers had some difficulty kicking in the door, and Ms. Tillman asserts that she had

yelled "hold on" to the officers and that at exactly the same time that the final kick was thrust,

she had placed her hand on the doorknob to allow the officers entry.  Ms. Tillman was thrown

backwards, breaking her right wrist.[4]  Not surprisingly, the parties do not agree as to whether the

officers had initially attempted to obtain consent to enter, or even needed to do so.

Ms. Tillman filed her initial complaint, which consisted of eight counts, on September 17,

2004.  On December 22, 2004 the parties stipulated that the sixth, seventh and eighth counts of

the Complaint, along with the demand for punitive damages, would be dropped against all

defendants.  The remaining five counts of the complaint allege the following: (1) a violation of

Ms. Tillman's Fourth Amendment rights by Officers Alonso, San Giorgio, Colgan and John

Does 1-10;[5] (2) a violation of Ms. Tillman's federal constitutional rights by Police Chief Leon

Hunter, John Doe Officers 1-10, Newtown, Marple, and Upper Providence Townships, by virtue

of their policy, practice and custom to authorize and cover up the use of excessive force in the

---

[4]  Ms. Tillman suffered a fracture of her right wrist, which required her to wear a cast for
six to seven weeks and undergo two surgeries.  Plaintiff's Response to Marple Fact Recitation at
¶ 21, n.1.

[5]  At oral argument, counsel for Ms. Tillman conceded that no John Doe officer
defendants had been identified in the course of discovery and that pursuit of those defendants
would be abandoned.  Nov. 23 Trans. at 4:21-25; 5:13-14.

4

absence of probable cause; (3) that Officers Alonso, San Giorgio, Colgan and the John Doe officers 1-10 intentionally violated Ms. Tillman's rights under the Pennsylvania Constitution; (4) a violation of Ms. Tillman's rights under the Pennsylvania Constitution against Newtown, Marple and Upper Providence Townships; and (5) assault and battery by Officers Alonso, San Giorgio, Colgan and John Doe officers 1-10.  On June 1, 2005, this Court entered an Order dismissing the third and fourth counts of the Complaint without prejudice, and on July 25, 2005, all claims against Upper Providence Township were dismissed by stipulation of the parties. Thus, the only claims remaining are the first, second and fifth counts alleging a violation of Ms. Tillman's Fourth Amendment rights by the individual defendants and Newtown Township and Marple Township, and a claim for assault and battery by each of the individual defendants.

The Marple Defendants filed their motion for summary judgment on September 7, 2005 and the Newtown Defendants followed suit on September 8, 2005.  Ms. Tillman filed her response to the motions on October 12, 2005. The Marple Defendants filed a Surreply Brief on November 2, 2005.  Additionally, on November 2, 2005, counsel for the Marple Defendants submitted as a supplement a recent case addressing certain of these pending issues from the Eastern District of Pennsylvania.

**DISCUSSION**

I.     **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a

5

reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## II.    Violation of Rights Conferred by the Fourth Amendment by Individual Defendants (Count I)

All of the Defendants argue that the forceful entry into Ms. Tillman's home was not an unreasonable search and seizure under the Fourth Amendment because exigent circumstances entitled the officers to enter the home without a warrant.  After conceding that "a warrantless

6

entry into another's home is a presumptively unreasonable search under the 4th Amendment," the Defendants assert that exigent circumstances may justify such an entry.   Conversely, Ms. Tillman asserts that there is sufficient evidence on the record here from which a jury could conclude the absence of exigency and that there was a violation of her Fourth Amendment rights.

Section 1983 provides a vehicle for imposing liability against anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by Constitution and laws." 42 U.S.C. § 1983.   The Fourth Amendment to the United States Constitution states that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

To establish a claim for excessive force under the Fourth Amendment, a plaintiff must show that actions taken by the police constituted a "search" or "seizure" within the meaning of the Fourth Amendment and that the actions were unreasonable in light of the surrounding circumstances.  Hogan v. Easton, No. 04-759, 2004 WL 1836992, at * 8 (E.D. Pa. Aug. 17, 2004).  In analyzing such a claim, a court must determine whether an officer's actions were reasonable "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation."  Graham v. M.S. Connor, 490 U.S. 386, 396 (U.S. 1989).  A reasonableness inquiry therefore "requires careful attention to the facts and

7

circumstances of each particular case, including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight." Id.  Additional factors to

consider include "the possibility that the persons subject to the police action are themselves

violent or dangerous, the duration of the action, whether the action takes place in the context of

effecting an arrest, the possibility that the suspect may be armed, and the number of persons with

whom the police officers must contend at one time." Rivas v. City of Passaic, 365 F.3d 181, 198

(3d Cir. 2004) (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).  Whether the

amount of force applied by an officer was reasonable is normally an issue for the jury.  Rivas,

365 F.3d at 198.

A warrantless entry into a home is considered a presumptively unreasonable search under

the Fourth Amendment.  Payton v. New York, 445 U.S. 573, 586 (1980).  However, in certain

emergent situations, exigent circumstances may excuse an officer from strict compliance with

constitutional safeguards.  United States v. Velazquez, 626 F.2d 314, 317 (3d Cir. 1980).  Such

exigence is typically found where there is a risk of destruction of evidence or escape of a

defendant, or where there is a threat of physical harm to a police officer or other innocent

individual.  Velazquez, 626 F.2d at 317.  The burden of establishing exigent circumstances lies

with the government, and where officers assert exigency due to their belief that a person is in

danger, the officers must establish that they reasonably believed that the person for whom they

were concerned was in *imminent* danger.  Parkhurst v. Trapp, 77 F.3d 707, 711 (3d Cir. 1996)

(emphasis added)(finding no imminent danger where officers searched home of parent looking

for child reported missing where no evidence that parent had harmed child and all guns from the

home had been confiscated).

In the instant case, all of the Defendants allege that the circumstances under which David Haske, Jr. was captured and arrested were sufficiently exigent to excuse compliance with constitutional safeguards.  Thus, to determine whether summary judgment is appropriate in this case, the Court must assess, as to each defendant, whether the record supports there being no dispute of fact that the defendant reasonably believed that it was necessary to enter the Tillman home by force, either to protect Ms. Tillman, to effect an arrest of David Haske, Jr., or both.  The Court finds that although the Defendants set forth a strong claim of exigence, there are disputes of certain material facts on the record with respect to Officers Alonso and San Giorgio that require a jury to assess the credibility of the witnesses and to decide the question of exigency.  Therefore, the Motion will be denied as to that claim against those defendants.

A.    **Summary Judgment as to Newtown Township, Marple Township and Leon Hunter**

While a municipality cannot be held liable for a Section 1983 violation on the basis of respondeat superior, Section 1983 liability may exist if a constitutional injury resulted from the execution of the municipality's policy or custom.  Monell v. Department of Social Services of the City of New York, 436 U.S.658, 663 n.7 (1978). A plaintiff pursuing a Section 1983 claim on a theory that the municipality acquiesced in behavior violating constitutional rights bears the burden of a "rigorous culpability and causation" standard. Board of County Comm. of Bryan County v. Brown, 520 U.S. 397, 405 (1997).

To establish that a municipality has a policy that violates Section 1983, a plaintiff must (1) identify the challenged policy; (2) attribute it to the municipality; and (3) show a causal link

9

between execution of the policy and the injury suffered.  Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984); see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (discussing manner in which municipality may be held liable under Section 1983).  To establish that a municipality has a custom that violates Section 1983, a plaintiff must identify a custom that is a practice "so permanent and well settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990).  An actionable custom is one in which a municipality exercises deliberate indifference to individuals' constitutional rights by ignoring a "pattern of underlying constitutional violations." Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).  Finally, a plaintiff must establish that there existed a "direct causal link" between the  custom and a resulting deprivation of constitutional rights.  Board of County Comm. of Bryan County v. Brown, 520 U.S. 397 (1997); see also Brown v. Muhlenberg, 269 F.3d 205, 214 (3d Cir. 2001) (party may show causation by demonstrating either policy or custom existed that directly caused alleged loss ); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (deliberate conduct by municipality must be the "moving force" or cause of alleged injury).[6]

At oral argument, counsel for Ms. Tillman represented that Ms. Tillman conceded that because there is no record evidence supporting the allegations that either Newtown or Marple Township had a custom or policy of condoning the use of excessive force by its police officers, the claims against the townships must be dismissed.  Nov. 23  Trans. at 3:24-25; 4:1-7.

---

[6] One example of a policy from which a reasonable inference of a custom or policy of deliberate indifference to the violation of a constitutional right is an automated system used by a police department to generate arrest warrants that allowed for a clerical error leading to a false arrest of an individual.  Berg v. County of Allegheny, 291 F.3d 261, 276 (3d Cir. 2000).

Likewise, there is no record evidence to support the claims against Leon Hunter, the chief of

police for Newtown Township who had no direct involvement in the incident at either the Haske

or the Tillman homes.  Nov. 23 Trans. at 5:21-24.  Because the motion for summary judgment on

behalf of these defendants is conceded, summary judgment will be granted in favor of Newtown

Township, Marple Township and Leon Hunter.

      B.     **Summary Judgment as to Officer Alonso**

As stated above, the reasonableness of police officers in making a decision to use force to

enter a home is to be measured considering not only the snapshot of circumstances at the

immediate scene, but also the surrounding circumstances.  Because there are disputes on this

record that call for the evaluation of the fact finder, summary judgment in favor of Officer

Alonso is not appropriate here.  For example, Officer Alonso, the officer who first arrived and

interviewed the Haske family, justified the forceful entry into the Tillman home because he

believed David Haske, Jr. had "just beat the hell out of everybody in that [the Haske] house" and

that he did not know what David might do to his grandmother.  J. Alonso Dep. at 11:21-23.  As

discussed above, to determine whether summary judgment is appropriate with respect to Officer

Alonso, the Court must assess whether there is a dispute as to whether Officer Alonso's belief

was objectively reasonable based on his initial visit to the Haske home such that a reasonable

juror could find in favor of Ms. Tillman.  Because the record contains evidence that the parties

dispute some material facts about what was actually seen at the Haske home, summary judgment

cannot be granted in favor of Officer Alonso.

At oral argument, the counsel for the Newtown Defendants presented the Court with a

copy of the notes of the 911 operator who took the initial call from the Haske home, arguing that

statements made by Mrs. Haske that "her son is hurting everyone" support a finding of exigence here.  Nov. 23 Trans. at 8:15-16.  However, that telephone call was only one piece of information that the officers had before making the decision to use force to enter the Tillman home, and there were a number of events that happened subsequent to the call, including the visit to the Haske home, which gave the officers additional information.  Thus, a reasonable person could not find exigence based solely on the notes from the initial call.

Once Officer Alonso arrived at the Haske home, there is a dispute as to how serious the situation appeared when the family members spoke to the police and, therefore, whether there was sufficient exigence by the time the officers arrived at the Tillman home to apply force to enter the home.  David Haske, Sr. testified that he had some blood on his shirt (which was David Haske, Jr.'s) when he spoke with Officer Alonso and that he did not recall anyone having any visible scrapes or cuts.  D. Haske, Sr. Dep. at 28:2-13.  Officer Alonso testified that Mr. Haske, Sr. came out of the house holding his head and told the officer that David, Jr. had "absolutely destroyed the inside of the house."  Alonso Dep. at 7:25; 8:1-7.

Officer Alonso and Mr. Haske, Sr. also testified that Kelly Haske, David Jr.'s sister, came outside with her parents when the police arrived.  D. Haske, Sr. Dep. at 27:12-22.  However, Kelly Haske testified that she stayed in the home and did not speak with the police until later.  K. Haske Dep. at 35:15-24; 36:1-21.  This contradictory testimony is important because Officer Alonso testified that his assessment of the circumstances was based, at least in part, on the presence of blood spattered on Kelly Haske's arms when police arrived at the Haske home.  J. Alonso Dep. at 7:8-13.  Additionally, the record reflects that of the three family members involved in the altercation with David, Jr., Kelly is the person who would have most likely

12

appeared to be physically injured.  See generally K. Haske Dep. at 24:14-24; 25:1-24; 26:1-24; 27:1-17.

Finally, the parties do not agree as to what was conveyed to Ms. Tillman when the officers initially visited the home.  Officer Alonso asserts that he told Ms. Tillman what had occurred at the Haske home and that David, Jr. had "just beat the hell out of everyone at his house," Ms. Tillman asserts that Officer San Giorgio[7] came to her home initially and told her that there had been an altercation at the Haske home, that the Haskes had had blood on them, but did not tell her not to allow David Haske, Jr. into her home.  Alonso Dep. at 9:1-13;  Tillman Dep. at 26:2-24; 27:1-7.  These discrepancies are important because they require the assessment of a fact finder to determine whether it was reasonable to conclude that David Haske, Jr. was a danger to Ms. Tillman, and to assess Ms. Tillman's consent to allow David, Jr. to enter her home and, subsequently, to allow the officers entry.  Because of these discrepancies, summary judgment is precluded as to Officer Alonso.

C.  **Summary Judgment as to Officer San Giorgio**

Officer San Giorgio's role in the incident on September 28, 2002 did not begin at the Haske home, but rather with a visit to, and ultimately, a forceful entry into, the Tillman home. To this end, Officer San Giorgio argues that any decision he made to use force to enter the home was based solely on his reliance on Officer Alonso's representations as to what happened at the Haske home and, therefore, he had a reasonable belief that exigent circumstances existed.  The

---

[7]  The Court notes that Ms. Tillman asserts that Officer San Giorgio, and not Officer Alonso (as the Defendants assert), was the police officer who made the initial visit to her home to advise her of the events that had occurred at the Haske home. See Tillman Dep. at 24:9-10; Alonso Dep. at 9:1-5.  Because both officers made the decision to use force to enter the home, this disagreement is not material to the incident.

record, however, does not reflect that Officer San Giorgio relied only on Officer Alonso's representations in making his decision.  For example, when questioned as to what factors Officer San Giorgio considered in deciding to use force to enter the home, he responded that one of the reasons he believed the situation was exigent and called for the use of force was his knowledge of prior encounters that David Haske, Jr. had with the police and that Mr. Haske, Jr. had a tendency toward violence.  San Giorgio Dep. at 15:1-5  Officer San Giorgio also testified that he knew the Tillman family well and, as a result, knew of the various problems the family had had with David.  San Giorgio Dep. at 7:21-25; 8:1-12.  However, the police reports which were made part of the record documenting David Haske, Jr.'s other police encounters prior to September 28, 2002 do not list Officer San Giorgio as a participating officer.  See generally Newtown Defendants' Ex. K.  Thus, a reasonable fact finder could question whether these known facts could have amplified the information that Officer San Giorgio had been given by Officer Alonso, thereby calling into question the amount of force Officer San Giorgio applied and instructed Officer Colgan to apply at the Tillman home.

In addition, there are facts on the record from which a reasonable fact finder could conclude that either Ms. Tillman gave actual consent to enter her home, thereby eliminating the need for any use of force and/or Ms. Tillman could be seen through window panes of her front door.  Ms. Tillman testified that as the police officers were on her front porch, she was (1) visible through either the windows on her front door and/or a large window and (2) she consented to allow them to enter by yelling "hold on" through the doorway.  Tillman Dep. at 41:21-24; 42:-18;  48:6-11.  Officer San Giorgio argues that he could not see Ms. Tillman because there were curtains over the door and the picture window that obscured his vision so that

he could only see "figures" in the living room and did not know whether they were Ms. Tillman or David Haske, Jr. San Giorgio Dep at 17:17-23; 18:2-7.

The Court concludes that these record facts call for an assessment of the credibility of the witnesses to discern whether Officer San Giorgio reasonably could have heard Ms. Tillman yell "hold on" or whether he could have seen clearly enough through any of the windows to know that it was Ms. Tillman, and not David, in the living room. Although at oral argument counsel for the Newtown Defendants argued that Officer San Giorgio's sighting of shadowy figures is irrelevant because it was impossible to discern whether that figure was Ms. Tillman or David Haske, Jr., this proposition actually demonstrates the need for a fact finder to hear the evidence and make a decision as to its efficacy. Nov. 23 Trans. at 34:21-25; 35:1-3. Because these discrepancies about material facts call for an evaluation by a fact finder, summary judgment is precluded with respect to Officer San Giorgio.

D.     **Summary Judgment as to Officer Colgan**

Officer Colgan argues that regardless of these factual disputes, because he was not the officer who decided to use force to enter the home, and was simply following the direction of a superior officer, Officer San Giorgio, in doing so. In support of this argument, counsel for Officer Colgan suggests that McHenry v. County of Delaware, No. 04-1011, 2005 U.S. Dist. LEXIS 25009 (E.D. Pa. Oct. 24, 2005) is instructive. In McHenry, the plaintiff was wrongly identified as the person for whom an arrest warrant had been issued and was subsequently arrested. McHenry, 2005 U.S. Dist. LEXIS 25009, at *9-10. As a result of the erroneous arrest, the plaintiff filed suit against all of the police officers who were involved in his arrest and subsequent processing. In considering the defendants' motion for summary judgment, the court

15

concluded that summary judgment in favor of the backup officers was appropriate because their belief that the arresting officer was serving a valid warrant on a suspect was reasonable, and that the officers had a right to rely on information provided by another officer.  McHenry, 2005 U.S. Dist. LEXIS 25009, at *16-17 (citing Doherty v. Haverkamp, No. 93-5256, 1997 U.S. Dist. LEXIS 7547, at *17 (E.D. Pa. May 27, 1997)).  The court further noted that the Constitution does not require every police officer to conduct an investigation with respect to probable cause, but that "lower level officers are permitted to rely upon the investigation conducted by more senior officials."  Id. (quoting Fullard v. City of Philadelphia, No. 95-4949, 1996 U.S. Dist. LEXIS 5321, at *28 (E.D. Pa. Apr. 22, 1996)).

The Court finds the reasoning in McHenry and in the cases cited in McHenry persuasive. In his deposition, Officer Colgan testified that when he arrived at the scene Officer San Giorgio was already at the front door and had begun to kick the door to open it.  Colgan Dep. at 11:3-6. Officer Colgan further testified that he was instructed by Officer San Giorgio, who was struggling to open the door, to kick the door in, and he did so because he was acting as an assisting police officer to another department and was, therefore, under the command of Officer San Giorgio.  Colgan Dep. at 12:5-6; 13:5-6.  Neither the Newtown Defendants nor Ms. Tillman dispute these facts.  Nov. 23 Trans. at 28:16-19.  Thus, in kicking in the door Officer Colgan was acting under the direction of Officer San Giorgio and reasonably relied on Officer San Giorgio's reasoning that there was an exigent need to use force to enter the home.  For this reason, summary judgment in favor of Officer Colgan is appropriate and will be granted.

## III.   Qualified Immunity for the Individual Defendants

The Defendants also argue that summary judgment should be granted in their favor

16

because they are protected by the doctrine of qualified immunity.  In general, government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).

Courts apply a two-part test to determine whether qualified immunity applies in a particular case.  First, a court must consider whether the facts, considered in a light most favorable to the allegedly injured party, show that the official's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Once it is shown that a constitutional right was violated, a court must then consider whether the right was clearly established, such that the official had reason to know the consequences of his or her specific actions. See Saucier, 533 U.S. at 201; Anderson v. Creighton, 483 U.S. 635, 636-37 (1987); see also Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000).  A "good faith" belief in the legality of conduct is not sufficient to support a finding of qualified immunity.  Parkhurst v. Trapp, 77 F.3d 707, 712 (3d Cir. 1996).  Rather, a court must determine whether "a reasonable person could have believed the defendant's actions to be lawful in light of clearly established law and the information he possessed."  Id.

Although qualified immunity "is an objective question to be decided by the court as a matter of law," disputed historical facts that are material to the qualified immunity question may be submitted to the jury.  Harvey v. Plains Township Police Dep't, 421 F.3d, 185, 194 n.12 (3d Cir. 2005), Becker, J. dissenting.  In this case, the facts that would establish a violation of Ms. Tillman's Fourth Amendment rights are at issue as discussed above.  For example, a jury determination that there were exigent circumstances excusing the need to enter the Tillman home

17

would negate the existence of a constitutional violation, thereby rendering an analysis with respect to qualified immunity futile.  If, on the other hand, a jury were to decide that a constitutional right had been violated, the Court would then have to decide whether the contours of that particular right were sufficiently clear such that a reasonable official would understand that his or her actions violated that right.  Harvey, 421 F.3d at 197-98 (dissent).

At this, the summary judgment, stage of the proceedings, the Court must resolve all factual disputes and grant all favorable inferences in favor of Ms. Tillman.  As such, the remaining issues with respect to whether there were exigent circumstances supporting the need for entry by force and whether Ms. Tillman gave actual consent to enter her home, once properly decided by a jury, will largely be determinative of the issue of qualified immunity.

**IV.    Failure to Establish an Assault and Battery (Count V)**

The Defendants finally argue that the fifth count of the Complaint, a claim for assault and battery against Officers Alonso, San Giorgio, Colgan and John Does 1-10, must fail because there is no evidence on the record from which a reasonable juror could conclude that Ms. Tillman suffered an assault and battery.  Ms. Tillman responds that because there are disputed facts with respect to the reasonableness of the behavior of the Defendants, summary judgment must be denied as to this claim as well.

Under Pennsylvania law, assault is "an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  In exercising authority or performing his or her duty, a police officer's use of force will not be considered assault and battery unless a jury determines that the

18

force used was unreasonable.  Renk, 641 A.2d at 293.

Although Officer Alonso participated in the decision to use force to enter the home, he did not participate in the actual incident that resulted in Ms. Tillman's injury.  Accordingly, there is not sufficient evidence from which a reasonable juror could conclude that Officer Alonso committed assault and battery as to Ms. Tillman.  Summary judgment will be granted in favor of Officer Alonso with respect to this count of the Complaint.

Alternatively, Officer San Giorgio not only made the decision to use force to enter the home, but also applied at least part of the force which resulted in injury. Under these circumstances, and considering the facts and record in a light most favorable to Ms. Tillman, the need to assess whether the decision and application of force was reasonable under the circumstances precludes a finding of summary judgment in favor of Officer San Giorgio on this count.

## CONCLUSION

For the reasons discussed above, summary judgment will be granted as to all claims against Newtown Township, Marple Township, Leon Hunter, Anthony Colgan and all "John Doe" defendants.  Summary judgment in favor of Officer Alonso will be granted as to Count V of the Complaint.  Summary judgment will be denied as to Officer San Giorgio and as to Officer Alonso with respect to Counts I and II of the Complaint.  An appropriate Order follows.

By the Court:

/S/_____
Gene E.K. Pratter
United States District Judge

December 16, 2005

19

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARBARA TILLMAN,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH M. ALONSO,** | : | |
| **STEVEN SAN GIORGIO,** | : | |
| **LEON HUNTER,** | : | |
| **ANTHONY COLGAN,** | : | |
| **NEWTOWN TOWNSHIP,** | : | |
| **MARPLE TOWNSHIP,** | : | |
| **UPPER PROVIDENCE TOWNSHIP,** | : | |
| **AND JOHN DOE 1-10,** | : | |
| **Defendants** | : | **NO. 04-4391** |

**<u>O R D E R</u>**

**AND NOW**, this 16th day of December, 2005, upon consideration of the Motion for Summary Judgment filed by Anthony Colgan and Marple Township (Docket Nos. 28, 32), the Motion for Summary Judgment filed by Joseph M. Alonso, Steven San Giorgio, Leon Hunter and Newtown Township (Docket Nos. 29, 30, 31), the responses thereto (Docket Nos. 33, 34, 35), the Reply Brief filed by Anthony Colgan and Marple Township (Docket No. 36), the Surreply Brief filed by Ms. Tillman (Docket No. 38) and after oral argument on the Motions, it is **ORDERED** that the Motions are **GRANTED** in part and **DENIED** in part.

The Motions are granted and summary judgment shall be entered in favor of Newtown Township, Marple Township, Leon Hunter, Anthony Colgan and John Doe Defendants 1-10.  With respect to Count V of the Complaint only, summary judgment shall be granted in favor of Joseph M. Alonso.  Summary judgment is denied with respect to Steven San Giorgio, and as to Counts I and II

of the Complaint with respect to Joseph M. Alonso.

BY THE COURT:


/S/_____
GENE E.K. PRATTER
United States District Judge